**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ---------------------------------------------------------------X<br>In re<br><br>Ballacorey Wheat Limited<br>(in Voluntary Liquidation)[1]<br><br>Debtor in a Foreign Proceeding.<br><br>---------------------------------------------------------------X | Chapter 15<br><br>Case No. 26-______ |

**VERIFIED PETITION FOR RECOGNITION OF**
**FOREIGN INSOLVENCY PROCEEDING AND RELATED RELIEF**

Stephen Robert Cork ("**Cork**"), in his capacity as the voluntary liquidator (the "**Liquidator**") of Ballacorey Wheat Limited (in Voluntary Liquidation) ("**Ballacorey**") in the voluntary liquidation of Ballacorey (the "**Ballacorey Liquidation**") pursuant to the Companies Act 1931 (the "**Companies Act**") and the Companies (Winding Up) Rules 1934 (the "**Companies Rules**"), by his undersigned United States counsel, Lennon Murphy & Phillips LLC and Gluck & Co. LLP, respectfully submits this Official Form Petition, this Verified Petition (together, the "**Petition**"), and the accompanying Declaration of Stephen Robert Cork, dated November 16, 2026 (the "**Cork Declaration**") and the exhibits thereto, for entry of an Order pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"):

(i) recognizing the Ballacorey Liquidation as a foreign main proceeding under 11 U.S.C. §§ 1502, 1517(a) and (b)(1), or, in the alternative, as a foreign nonmain proceeding pursuant to 11 U.S.C. § 1517(b)(2);

[1] Ballacorey Wheat Limited (in Voluntary Liquidation) is an Isle of Man limited company, with registration number 116800C.

(ii) recognizing the Liquidator as Ballacorey's "foreign representative" under 11 U.S.C. §§ 101(24) and 1517(a)(2);

(iii) confirming that the Liquidator has satisfied the requirements of 11 U.S.C. § 1515;

(iv) granting automatic relief pursuant to section 1520 of the Bankruptcy Code;

(v) granting other and additional relief pursuant to sections 1507, 1521(a), and 1521(b) of the Bankruptcy Code, including (a) authorizing the Liquidator, pursuant to section 1521(a)(4), to examine witnesses, take evidence, and seek the production of documents concerning the assets, affairs, rights, obligations, and liabilities of Ballacorey by issuing subpoenas to, *inter alia*, Christopher F. Brown and to banks that processed U.S. dollar-denominated wire transfers relating to Ballacorey, Christopher F. Brown, or the transactions described herein, and (b) entrusting the administration, realization, and distribution of Ballacorey's assets within the territorial jurisdiction of the United States to the Liquidator pursuant to sections 1521(a)(5) and 1521(b); and

(vi) granting such other and further relief as the Court may deem just and proper.

## I. PRELIMINARY STATEMENT

Ballacorey is an Isle of Man private company limited by shares that was incorporated on June 12, 2006, with company number 116800C. Ballacorey served as an investment holding company, with its registered office being located at Fort Anne, South Quay, Douglas, Isle of Man IM1 5PD. Ballacorey entered creditors' voluntary liquidation on June 6, 2025, when its members passed an extraordinary resolution pursuant to section 214(1)(c) of the Companies Act that Ballacorey be wound up voluntarily, and its members and creditors, at meetings held that day, appointed Stephen Robert Cork and Mark Smith ("**Smith**") of Cork Gully LLP as joint liquidators

authorized to act jointly or separately.[2] The Liquidator seeks recognition so that he may investigate and pursue Ballacorey's U.S.-based claims and recovery targets, including claims against Christopher F. Brown ("**Brown**"), a Greenwich, Connecticut resident. Recognition is necessary because the Liquidator seeks to marshal Ballacorey's assets and claims in the United States, including by obtaining discovery from Brown and relevant intermediary banks.

The claims under investigation ultimately relate to Brown's misappropriation and concealment of funds through a structure that used Ballacorey bank accounts as cash collateral for Brown's personal borrowing. Brown caused over $10 million in funds to be transferred out of Ballacorey's former parent company, GEM Global Yield Fund Limited ("**GGYF**"), for his own benefit, and then arranged facilities with Barclays in substantially similar amounts to create the appearance of legitimate third-party lending. The loan proceeds were ultimately transferred into Ballacorey-titled accounts and held at Barclays as security. Through this circular lending scheme, Brown absconded with GGYF's funds, while leaving Ballacorey on the hook for repayment. When Brown defaulted, Barclays took Ballacorey's funds to satisfy Brown's personal debts, and that loss caused Ballacorey's insolvency.

The Ballacorey Liquidation is a foreign proceeding under Chapter 15. It is a creditors' voluntary winding up under Part V of the Companies Act and the Companies Rules, commenced on June 6, 2025 by an extraordinary resolution under section 214(1)(c) of the Companies Act, which permits a company to be wound up voluntarily where it resolves that "it cannot by reason of its liabilities continue its business, and that it is advisable to wind up." The Companies Act terminates the powers of Ballacorey's directors, requires that Ballacorey's property be applied to its liabilities *pari passu*, gives creditors a central role in the winding up, and subjects the Liquidator

[2] Smith resigned with effect from February 25, 2026, and Cork now acts as the sole continuing Liquidator.

and the winding up to the supervision of the High Court of Justice of the Isle of Man (the "**Isle of Man Court**").

The Isle of Man is Ballacorey's center of main interests. Ballacorey was incorporated in the Isle of Man, maintains its registered office there, files its statutory returns with the Isle of Man Companies Registry, held its bank accounts in the Isle of Man, extensively litigated its claims in the Isle of Man Court, operated from the Isle of Man, and is being wound up under Isle of Man law.

The Liquidator does not seek provisional relief before recognition at this time. Upon recognition, the Liquidator seeks the automatic relief afforded to a foreign main proceeding and discretionary relief authorizing discovery and entrusting administration of Ballacorey's U.S. assets and claims to the Liquidator.

## II. JURISDICTION, ELIGIBILITY, AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(P), and the statutory predicates for the relief requested include 11 U.S.C. §§ 105(a), 1504, 1507, 1509, 1515, 1517, 1520, and 1521.

2. Ballacorey is eligible for relief under section 109(a) of the Bankruptcy Code because it has property in the United States and in this District. That property includes a retainer deposited with the Liquidator's Connecticut counsel, Lennon Murphy & Phillips LLC, of Westport, Connecticut (the "**LMP Retainer**"), as well as Ballacorey's claims and rights of recovery against Brown, who resides in Greenwich, Connecticut. Section 109(a) of the Bankruptcy Code applies in chapter 15 cases, and an attorney retainer held in the United States satisfies its property requirement. *See In re B.C.I. Fins. Pty Ltd.*, 583 B.R. 288, 293-94 (Bankr. S.D.N.Y. 2018).

3. Venue is proper in this District pursuant to 28 U.S.C. § 1410(1) because Ballacorey's principal assets in the United States, including the LMP Retainer held by Lennon Murphy & Phillips LLC in Westport, Connecticut, are located in this District. In any event, venue here is consistent with the interests of justice and the convenience of the parties, *see* 28 U.S.C. § 1410(3), because Brown, the principal subject of the discovery the Liquidator seeks, resides in Greenwich, Connecticut.

4. This case has been properly commenced pursuant to 11 U.S.C. §§ 1504 and 1515 by the filing of the Petition for recognition of the Ballacorey Liquidation. The Liquidator proposes to provide notice of the Petition and recognition hearing to the United States Trustee and submits that no further notice is necessary.

## III. FACTUAL BACKGROUND

### A. Ballacorey's Formation, Ownership, and Management

5. Ballacorey was incorporated in the Isle of Man under the Companies Acts 1931 to 2004 on June 12, 2006, as a private company limited by shares, with company number 116800C. Its memorandum of association provides for share capital of £2,000 divided into 2,000 shares of £1.00 each. Cork Decl. ¶¶ 7-8, Exhibits 1-2.

6. Ballacorey's registered office is Fort Anne, South Quay, Douglas, Isle of Man IM1 5PD. Its 2024 annual return records 100 issued ordinary shares and identifies its principal trade or business as "Investment Holding." Cork Decl. ¶ 9, Exhibit 3.

7. Ballacorey was previously a subsidiary of GGYF, a Cayman Islands company. Ballacorey's 2024 annual return records its 100 issued ordinary shares as held in equal parts by GEM Management Limited and Quist Services Inc., each with an address in Tortola, British Virgin Islands. Cork Decl. ¶ 10, Exhibit 3.

8. Ballacorey's corporate affairs were administered by LJ Management (IOM) Limited, formerly known as CM Management Limited ("**LJ Management**"), an Isle of Man fiduciary services company that supplied the directors of Ballacorey and GGYF. Those directors included Clive Needham ("**Needham**") and Robert Burton ("**Burton**"). Cork Decl. ¶ 11.

9. Brown is a citizen of the United States and resides in Greenwich, Connecticut. He was a director of GGYF from April 26, 2005 until he was removed from GGYF's board on January 14, 2015. Brown was never a director of Ballacorey. Cork Decl. ¶ 12.

10. Ballacorey maintained two U.S. dollar accounts with Barclays at its branch in Douglas, Isle of Man: account number ending in 0633 (the "**First Account**") and account number ending in 9755 (the "**Second Account**"). Barclays Private Clients International Limited held the accounts and made the loans described below until 2016, when Barclays Bank PLC, acting through its Isle of Man branch, acquired its rights and liabilities by a statutory assignment approved by the Isle of Man Court. This Petition refers to both entities as "**Barclays**." Cork Decl. ¶ 13.

11. Ballacorey's last pre-liquidation annual account was for the financial period ending June 12, 2024. Cork Decl. ¶ 14.

12. On August 14, 2023, Ballacorey executed a legal charge in favor of GGYF securing a principal amount of $10,725,966 over the First Account and the Second Account. Ballacorey's 2024 annual return records indebtedness of $10,725,966 secured by that charge. Cork Decl. ¶ 15, Exhibit 4.

### B. Brown's Misappropriation of GGYF's Funds and the Barclays Cash-Collateral Structure

13. On information and belief, between February 26, 2010 and October 10, 2012, Brown misappropriated a total of $15,125,966 from GGYF in four tranches. In each instance, GGYF acted by and through Brown and others. Cork Decl. ¶ 16.

14. On February 26, 2010, $5,225,966 was transferred from GGYF to LJ Management (the "**First Transfer**"). LJ Management then transferred an identical sum to attorneys acting for Brown and/or GEM Properties (Bahamas) Limited, a company that Brown beneficially owns and that is unrelated to GGYF, in the acquisition of a property in the Bahamas (the "**Bahamas Property**"). Cork Decl. ¶ 17.

15. On November 17, 2011, $6,200,000 was transferred from GGYF to attorneys acting for Brown in the acquisition of an apartment in Manhattan, New York (the "**Manhattan Property**") (the "**Second Transfer**"). Cork Decl. ¶ 18.

16. On September 28, 2012, GGYF transferred a further $3,000,000 to Brown (the "**Third Transfer**"), and on October 10, 2012, GGYF transferred another $1,400,000 to Brown (the "**Fourth Transfer**"). Cork Decl. ¶ 19.

17. At the instigation of Brown and others, GGYF assigned to Ballacorey the receivables owed by Brown in respect of the First Transfer and the Second Transfer (the "**Brown Indebtedness**"). As a result, Ballacorey became Brown's creditor for $10,725,966, and GGYF became a creditor of Ballacorey. Cork Decl. ¶ 20.

18. On information and belief, to conceal the source of the funds he used to acquire the Bahamas Property and the Manhattan Property, Brown arranged to borrow substantially the same amounts from Barclays. He then purported to repay the Brown Indebtedness by transferring the loan proceeds into the First Account. This gave the appearance that Brown had acquired the properties with third-party bank lending rather than with funds taken from GGYF. Cork Decl. ¶ 21.

19. A director of Ballacorey approached Barclays in February 2010 as Brown's representative. By a facility letter dated July 19, 2010, which Brown signed on September 16, 2010, Barclays agreed to lend Brown $5,225,966 for a ten-year term (the "**First Loan**"). The

facility letter stated that the purpose of the loan was to assist with the purchase of property in the Bahamas, even though the Bahamas Property had already been acquired with GGYF's funds. It required that the loan be drawn into Brown's account and then transferred into Ballacorey's account, and that Brown's obligations be secured by a legal charge over Ballacorey's account. Cork Decl. ¶ 22.

20. Brown drew down the First Loan on October 29, 2010, and an identical sum was transferred into the First Account on November 4, 2010. Cork Decl. ¶ 23.

21. Brown caused Ballacorey to execute a charge dated October 29, 2010 over the First Account in favor of Barclays as security for Brown's personal borrowing (the "**First Charge**"). Ballacorey's board had resolved on October 21, 2010 to grant a charge only in consideration of lending to Ballacorey itself, not to Brown. Cork Decl. ¶ 24.

22. On November 17, 2011, the day of the Second Transfer, a Ballacorey director told Barclays that because the money had already been sent from GGYF, the funds would never leave Barclays and would instead go into a segregated Ballacorey account. By a facility letter dated December 1, 2011, which Brown signed on December 2, 2011, Barclays agreed to lend Brown a further $5,500,000 on substantially the same terms, with a stated purpose of purchasing a property (the "**Second Loan**"). Brown drew down the Second Loan on January 20, 2012, and an identical sum was transferred into the First Account the same day. Cork Decl. ¶ 25, Exhibits 5-6.

23. In June 2012, Needham and Burton, as directors of Ballacorey, caused Ballacorey to execute a second charge over the Second Account in favor of Barclays (the "**Second Charge**"). On June 29, 2012, $10,736,499.88, representing the proceeds of both loans plus accrued interest, was transferred from the First Account to the Second Account, a non-interest-bearing account. By

their terms, the First Charge and the Second Charge secured no more than $5,225,966. Cork Decl. ¶ 26.

24. The structure ensured that the funds taken from GGYF were never actually returned. Although Ballacorey nominally received the loan proceeds in repayment of the Brown Indebtedness, the funds never left Barclays. They remained frozen in Ballacorey's accounts as security for Brown's personal loans, and Ballacorey could not use them. Cork Decl. ¶ 27.

25. Brown later sought to have Ballacorey's cash pay off his personal borrowing. In April 2015, more than five years before the First Loan matured, Barclays acted on Brown's instruction and sought to repay his loan from the cash held in Ballacorey's name. The then manager of Ballacorey refused. Cork Decl. ¶ 28.

26. Brown then defaulted. The First Loan became repayable in full on October 29, 2020, and Brown failed to repay it. On December 18, 2020, Barclays withdrew $5,225,966 from the Second Account and applied it to Brown's liability under the First Loan (the "**First Brown Indebtedness**"). Cork Decl. ¶ 29.

**C. The Isle of Man Proceedings and Ballacorey's Claims Against Brown**

27. On September 2, 2019, Ballacorey and GGYF commenced proceedings in the Isle of Man Court against Brown, Barclays, and others under Claim No. ORD 19/0035 (the "**Isle of Man Proceedings**"). The claim form and particulars of claim were amended on December 8, 2023. Cork Decl. ¶ 30, Exhibit 7.

28. Barclays denied the claims and sought rectification of the Second Charge to increase the secured amount to $10,725,966, the aggregate of both loans. After Ballacorey and GGYF did not pay security for costs, their claim was struck out with effect from July 30, 2024, and Barclays pursued its rectification claim against Ballacorey as sole defendant. Cork Decl. ¶ 31.

29. On October 9, 2025, Ballacorey, acting through its liquidators, and GGYF entered into a settlement agreement with Barclays (the "**Barclays Settlement**"). The Barclays Settlement expressly preserves any claims Ballacorey has against Brown in respect of Ballacorey's payments under the First Charge and the Second Charge on account of Brown's indebtedness to Barclays. Under the Barclays Settlement, Barclays released $50,000 from the Second Account to the liquidators and retained the remaining balance of the Second Account, nearly $5.5 million, on account of Brown's indebtedness to Barclays (the "**Second Brown Indebtedness**"). Cork Decl. ¶ 32.

30. Ballacorey's primary asset is therefore its rights of recovery against Brown, relating to the First and Second Brown Indebtedness. Brown has repaid none of it. Cork Decl. ¶ 33.

**D. The Ballacorey Liquidation**

31. Brown's misappropriation and the resulting loss of Ballacorey's funds to Barclays on account of Brown's personal borrowing caused Ballacorey's insolvency. Having been stripped of the funds in the Second Account, and with Brown having repaid none of the Brown Indebtedness, Ballacorey was left unable to meet its liabilities, including its indebtedness to GGYF. Cork Decl. ¶ 34.

32. Accordingly, at meetings of Ballacorey's members and creditors held on June 6, 2025, Ballacorey's members passed an extraordinary resolution pursuant to section 214(1)(c) of the Companies Act that Ballacorey be wound up voluntarily, and Ballacorey's members and creditors appointed Cork and Smith as joint liquidators. Cork Decl. ¶ 35, Exhibit 8.

33. The joint liquidators gave notice of their appointment to the Isle of Man Companies Registry. Cork Decl. ¶ 36, Exhibit 9.

34. Following Smith's resignation effective February 25, 2026, Cork, by written resolution dated June 23, 2026, continued as sole Liquidator with all the powers and authority vested in the office of liquidator under the Companies Act. Cork Decl. ¶ 37, Exhibit 10.

35. The liquidation remains open because the Liquidator is investigating potential claims against third parties to maximize realizations. On June 30, 2026, the Liquidator filed with the Isle of Man Registrar of Companies a statement of his receipts and payments for the period from June 6, 2025 to June 5, 2026, verified by affidavit, pursuant to section 267 of the Companies Act and the Companies Rules. Cork Decl. ¶ 38, Exhibit 11.

36. The Liquidator's investigation centers on Brown, who resides in Connecticut. Discovery from Brown, and from banks that processed U.S. dollar wire transfers connected to Brown, Ballacorey, GGYF, and the transactions described above, is necessary to trace the First through Fourth Transfers, identify the recipients and proceeds of those funds, and locate assets from which Ballacorey can recover.

## IV. <u>BASIS FOR RELIEF</u>

### A. Ballacorey Is Eligible for Relief Under Section 109(a) of the Bankruptcy Code

37. Foreign debtors seeking relief under chapter 15 must satisfy the debtor eligibility requirements of 11 U.S.C. § 109(a). *In re Barnet*, 737 F.3d 238, 247 (2d Cir. 2013). Section 109(a) provides that "only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title." 11 U.S.C. § 109(a). Section 109(a) does not specify how much property must be present, or when or for how long the property must have had a United States *situs*. *See In re Berau Capital Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015). Even a nominal amount of property suffices, and the statute does not "direct that

there be any inquiry into the circumstances surrounding the debtor['s] acquisition of the property." *B.C.I. Fins.*, 583 B.R. at 295.

38. Courts in this Circuit consistently hold that "[a] debtor's funds held in a retainer account in the possession of counsel to a foreign representative constitute property of the debtor in the United States and satisfy the eligibility requirements of section 109." *Id.* at 293; *In re U.S. Steel Can. Inc.*, 571 B.R. 600, 611 (Bankr. S.D.N.Y. 2017).

39. Here, Ballacorey satisfies section 109(a) of the Bankruptcy Code because it has property in the United States, and in this District, in the form of the LMP Retainer. The LMP Retainer remains in Lennon Murphy & Phillips LLC's client trust account in Connecticut, and it constitutes Ballacorey's property. Cork Decl. ¶¶ 39-40. Ballacorey's claims against Brown, a Connecticut resident, may provide an independent basis for eligibility. *See In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 369-70 (Bankr. S.D.N.Y. 2014) (claims and causes of action against U.S. defendants constitute property in the United States).

**B. The Ballacorey Liquidation Should Be Recognized Under Chapter 15**

40. The Petition should be granted because (1) the Ballacorey Liquidation is a "foreign proceeding" that is a foreign main proceeding or, alternatively, a foreign nonmain proceeding; (2) the Liquidator, who commenced this case, is a duly authorized "foreign representative"; and (3) the Petition satisfies section 1515. When those requirements are met, and subject only to section 1506, an order of recognition "shall be entered." 11 U.S.C. § 1517(a); *see In re Ocean Rig UDW Inc.*, 570 B.R. 687, 699 (Bankr. S.D.N.Y. 2017) (citing *In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 306 (3d Cir. 2013)).

**i. Legal Standards**

41. Chapter 15's goal "is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency," while promoting international cooperation, legal certainty, fair and efficient administration of cross-border insolvencies, and protection and maximization of debtors' assets. *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 132 (2d Cir. 2013) (quoting 11 U.S.C. § 1501(a)). Chapter 15 and the Model Law "are designed to optimize disposition of international insolvencies by facilitating appropriate access to the court system of a host country (the United States, in the case of Chapter 15) by a representative of an insolvency proceeding pending in a foreign country." *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008).

42. Recognition "turns on the strict application of objective criteria," while post-recognition relief "is largely discretionary and turns on subjective factors that embody principles of comity." *Bear Stearns*, 389 B.R. at 333. Chapter 15 "is designed to foster cooperation with foreign proceedings." *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 69 (Bankr. S.D.N.Y. 2011). Once a foreign proceeding is recognized, chapter 15 "provides courts with broad, flexible, and pragmatic rules to fashion relief." *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 810 (Bankr. S.D.N.Y. 2018).

**ii. The Ballacorey Liquidation Is a "Foreign Proceeding"**

**1. A Voluntary Liquidation Can Be a "Foreign Proceeding"**

43. The Ballacorey Liquidation satisfies the definition of "foreign proceeding" required by section 1517(a)(1) of the Bankruptcy Code. Section 101(23) defines a foreign proceeding as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets

and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

44. The Ballacorey Liquidation is a creditors' voluntary winding up. Courts applying chapter 15, including those in the Third, Ninth, and Eleventh Circuits, have recognized voluntary liquidations conducted under comprehensive statutory insolvency regimes. *See, e.g.*, *In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 327-32 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013) (Australian liquidation commenced by creditors' resolution); *In re Manley Toys Ltd.*, 580 B.R. 632, 636 (Bankr. D.N.J. 2018), *aff'd*, 597 B.R. 578 (D.N.J. 2019) (recognizing Hong Kong creditors' voluntary liquidation); *In re Betcorp Ltd.*, 400 B.R. 266, 277-85 (Bankr. D. Nev. 2009) (recognizing Australian members' voluntary winding up); *In re Xenfin Fund 1 Trading Ltd.*, No. 21-16253, ECF No. 45 (Bankr. S.D. Fla. 2021) (recognizing Guernsey voluntary liquidation).

45. As explained in *Betcorp*, in the context of Chapter 15, "the word 'proceeding' requires a broader definition in order to achieve the statutory directive of interpretation consistent with the understandings and the usages of international law and the UNCITRAL Model Law." 400 B.R. at 277. As such:

> the essence of a 'proceeding' [is] the acts and formalities set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice. In the context of corporate insolvencies, the hallmark of a 'proceeding' is a statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets.

*Id.* at 278.

46. Under these principles, the Ballacorey Liquidation is a "proceeding" under 11 U.S.C. § 101(23). Part V of the Companies Act establishes a comprehensive statutory framework for the winding up of an Isle of Man company like Ballacorey, whether by the court, voluntarily, or subject to the supervision of the court. Companies Act § 155.

47. First, the Companies Act constrains a company's actions once a voluntary winding up begins. The winding up commences when the resolution for voluntary winding up is passed. *Id.* § 215A. From that moment, the company must cease to carry on its business except as required for its beneficial winding up, *id.* § 216, and any transfer of shares or alteration in the status of members made without the liquidator's sanction is void, *id.* § 217. In a creditors' voluntary winding up, "all the powers of the directors shall cease" upon the appointment of a liquidator, except so far as the committee of inspection or, if there is none, the creditors sanction their continuance. *Id.* § 229(2); *see Betcorp*, 400 B.R. at 280 ("The fact that commencing this type of external administration terminates the authority of the company's directors . . . lends further support to a finding that this Australian legal process is a proceeding.").

48. Second, the Companies Act governs the distribution of Ballacorey's assets. Subject to the Companies Act's provisions on preferential payments, "the property of a company shall, on its winding up, be applied in satisfaction of its liabilities *pari passu*," with any surplus distributed among members according to their rights and interests in the company. Companies Act §§ 234, 235, 249. Because Ballacorey is insolvent, the Companies Act further applies the rules in bankruptcy to the respective rights of secured and unsecured creditors and to debts provable. *Id.* § 248; *see ABC Learning*, 445 B.R. at 328 (finding a proceeding where "the effect on corporate governance, the duties and responsibilities of the liquidators, the rights of creditors, including priorities" were all governed by statute).

49. Third, the Companies Act confers rights on interested parties other than the Liquidator and preserves the Isle of Man Court's authority over the Ballacorey Liquidation. The voluntary winding up of a company does not bar any creditor or contributory from petitioning to have the company wound up by the court. Companies Act § 242. The Isle of Man Court may also

order that a voluntary winding up continue subject to its supervision, "with such liberty for creditors, contributories, or others to apply to the court, and generally on such terms and conditions as the court thinks just." *Id.* § 243. The Isle of Man Court may, on cause shown, remove a liquidator and appoint another, and may appoint a liquidator if for any reason none is acting. *Id.* § 237. The Liquidator or any creditor or contributory may apply to the Isle of Man Court "to determine any question arising in the winding up," or to have the court exercise any power it could exercise in a winding up by the court. *Id.* § 240. And if it appears in the course of the winding up that a past or present director, manager, or liquidator has misapplied or retained money or property of the company, or committed misfeasance or breach of trust, the Isle of Man Court may assess damages against that person. *Id.* § 260.

50. Fourth, the Companies Act imposes ongoing reporting obligations on the Liquidator. Where, as here, a creditors' voluntary winding up continues for more than one year, the Liquidator must summon a general meeting of the company and a meeting of creditors at the end of the first year and of each succeeding year, and must lay before those meetings an account of his acts and dealings and of the conduct of the winding up during the preceding year. Companies Act § 232. The Liquidator must also file statements of his receipts and payments with the Isle of Man Registrar of Companies, as he did on June 30, 2026. *Id.* § 267; Cork Decl. ¶ 43.

51. Once Ballacorey's affairs are fully wound up, the Liquidator must prepare a final account showing how the winding up was conducted and how Ballacorey's property was disposed of, and must lay that account before final meetings of members and creditors. Companies Act § 233.

52. Finally, that the Ballacorey Liquidation was commenced by resolution rather than by application or petition to the Isle of Man Court does not mean that it is not a "foreign

proceeding." In *Betcorp*, the court rejected the argument "that the absence of an application or a petition to an Australian court proves the winding up is not a proceeding," finding it "not persuasive" in light of the governing statute. *Betcorp*, 400 B.R. at 280; *see also Petition of Ward*, 201 B.R. 357, 359 (Bankr. S.D.N.Y. 1996), corrected (Oct. 10, 1996) (that a voluntary winding up is not commenced by application to the court is "relevant to, but not dispositive of," whether it is a foreign proceeding).

**2. The Ballacorey Liquidation Meets the Elements of 11 U.S.C. § 101(23)**

53. Courts apply seven elements to determine whether 11 U.S.C. § 101(23) is satisfied: "(i) [the existence of] a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation." *In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 638 (Bankr. S.D.N.Y. 2018).

54. The Ballacorey Liquidation satisfies these elements.

55. First, for the reasons set forth above, the Ballacorey Liquidation is a "proceeding."

56. Second, the Ballacorey Liquidation is a "judicial or administrative proceeding." Most of the Liquidator's tasks are administrative, including collecting and realizing Ballacorey's assets, applying them to Ballacorey's liabilities *pari passu* and in accordance with the priorities set by the Companies Act, convening meetings of members and creditors, filing statutory returns, and investigating Ballacorey's affairs and potential claims. Companies Act §§ 232, 235, 236, 267; Cork Decl. ¶¶ 41-44. The Ballacorey Liquidation takes on a judicial character whenever the Isle of Man Court exercises its supervisory powers, including to determine questions arising in the

winding up, to remove or appoint a liquidator, or to order that the winding up continue under its supervision. Companies Act §§ 237, 240, 243; *see ABC Learning*, 445 B.R. at 328 ("A winding up becomes judicial in character whenever the Australian Court exercises its supervisory powers . . . .").

57. Third, the Ballacorey Liquidation is "collective in nature." A collective proceeding is one that "considers the rights and obligations of all creditors," in contrast to "a receivership remedy instigated at the request, and for the benefit, of a single secured creditor." *Betcorp*, 400 B.R. at 281. Courts consider "both the law governing the foreign action and the parameters of the particular proceeding." *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (citation omitted). Both point the same way here. The Companies Act requires a meeting of creditors at the outset of a creditors' voluntary winding up, gives the creditors' nominee priority as liquidator, provides for a committee of inspection, requires annual meetings of creditors, mandates *pari passu* distribution subject to statutory priorities, and permits any creditor to seek relief from the Isle of Man Court. Companies Act §§ 226-228, 232, 235, 240, 242. Ballacorey's creditors met on June 6, 2025 and participated in appointing the Liquidator.

58. Fourth, the Ballacorey Liquidation is pending in the Isle of Man, a foreign country. Ballacorey is an Isle of Man company with its registered office in Douglas, Isle of Man. The Ballacorey Liquidation was commenced by resolutions passed under the Companies Act, is governed by Isle of Man law, and is reflected in filings with the Isle of Man Companies Registry. Judicial supervision of the Ballacorey Liquidation rests with the Isle of Man Court. Companies Act §§ 237, 240, 242, 243.

59. Fifth, the Ballacorey Liquidation is conducted under the Companies Act, a statute "relating to insolvency or adjustment of debt." 11 U.S.C. § 101(23). The proceeding "must be

authorized by a statute that deals with corporate insolvency or the adjustment of corporate debts. The fact that a proceeding has a 'unified structure of the external administration provisions' favors a finding that the statute meets this criterion." *Ashapura*, 480 B.R. at 138 (quoting *Betcorp*, 400 B.R. at 282).

60. The Companies Act is such a statute. Part V of the Companies Act governs the winding up of Isle of Man companies, including insolvent companies. It provides for winding up by the court where a company is unable to pay its debts, for a voluntary winding up where a company resolves that "it cannot by reason of its liabilities continue its business," and for a voluntary winding up to continue subject to court supervision. Companies Act §§ 155, 162-163, 214(1)(c), 225-233, 243. It governs the appointment, powers, and duties of the liquidator, the proof and ranking of claims, the application of bankruptcy rules to insolvent companies, the avoidance of fraudulent preferences, and offenses by officers of companies in liquidation. *Id.* §§ 227, 236, 247-250, 255-261; *see Ashapura*, 480 B.R. at 144 (the "statutory ability to alternate between various remedial measures as warranted by the circumstances" supports this element); *Betcorp*, 400 B.R. at 282 ("the statutory ability to shift among various forms of dissolution given changing circumstances, demonstrate that winding up is achieved under a law relating to insolvency or the adjustment of debts").

61. Sixth, Ballacorey's assets and affairs are subject to the control or supervision of a foreign court. Although the Isle of Man Court does not oversee the Liquidator's day-to-day administration, that is not required. "Supervision or control of the company's affairs is not a demanding standard. The foreign court need not control the day-to-day operations of the debtor." *Ashapura*, 480 B.R. at 138.

62. The Companies Act places the Ballacorey Liquidation under the Isle of Man Court's supervision. The Liquidator or any creditor or contributory may apply to the Isle of Man Court "to determine any question arising in the winding up." Companies Act § 240. The Isle of Man Court may remove the Liquidator on cause shown and appoint a replacement. *Id.* § 237. It may order that the winding up continue subject to its supervision, or order that Ballacorey be wound up by the court on the petition of any creditor or contributory. *Id.* §§ 242, 243. And it may assess damages against delinquent officers and liquidators. *Id.* § 260.

63. Courts have found comparable provisions sufficient. *See ABC Learning*, 445 B.R. at 331-32 (court power to remove liquidator and to determine "any question arising in the winding up"); *Betcorp*, 400 B.R. at 284 (same); *Ward*, 201 B.R. at 360-61 (court power to replace liquidator and to wind up company judicially at creditor's request). That most steps proceed without court involvement does not undermine that supervision. *See ABC Learning*, 445 B.R. at 332 ("the majority of U.S. bankruptcies proceed with minimal court involvement").

64. Finally, the Ballacorey Liquidation exists "for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23). Ballacorey's members resolved, pursuant to section 214(1)(c) of the Companies Act, that Ballacorey be wound up voluntarily, a remedy available where a company "cannot by reason of its liabilities continue its business." Companies Act § 214(1)(c). The Liquidator's task is to realize Ballacorey's assets, apply them to its liabilities, and bring about its dissolution. Companies Act §§ 233, 235, 236.

65. For these reasons, the Ballacorey Liquidation is a "foreign proceeding" in satisfaction of 11 U.S.C. § 1517(a)(1).

### 3. The Liquidator Is the "Foreign Representative" of Ballacorey

66. A chapter 15 case is commenced by a "foreign representative" filing a petition for recognition. 11 U.S.C. §§ 1504, 1509(a), 1515(a). A "foreign representative" is "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). Section 101(24) does not require that the foreign representative be appointed by a foreign court. *See In re OAS S.A.*, 533 B.R. 83, 95 (Bankr. S.D.N.Y. 2015) ("the Bankruptcy Code does not require the judicial authorization or appointment of the foreign representative").

67. Cork was appointed joint liquidator of Ballacorey by its members and creditors on June 6, 2025, and has acted as such since then. Upon the appointment of the Liquidator, the powers of Ballacorey's directors ceased, and the Liquidator alone is authorized to administer Ballacorey's assets and affairs under the Companies Act. Companies Act §§ 229(2), 236.

68. The Liquidator is thus a proper "foreign representative" within the meaning of section 101(24) with respect to Ballacorey, and section 1517(a)(2) is satisfied.

### 4. The Liquidator Properly Filed This Case

69. The Liquidator duly and properly filed this proceeding as required by section 1504 of the Bankruptcy Code by filing the petition pursuant to 11 U.S.C. § 1515(a).

70. The Petition is accompanied by the documents required by section 1515. Because the Ballacorey Liquidation was commenced by resolution rather than by court order, the Liquidator has submitted under section 1515(b)(3), as evidence of the existence of the Ballacorey Liquidation and of his appointment, copies of the resolutions passed on June 6, 2025, the notice of the liquidators' appointment, the Liquidator's written resolution of June 23, 2026, and his statutory

filings with the Isle of Man Companies Registry. 11 U.S.C. § 1515(b)(3); *see ABC Learning*, 445 B.R. at 334 (statement of foreign representative was acceptable evidence under section 1515(b)(3)). The Petition is also accompanied by the statement required by section 1515(c), which is set out in the List Filed Pursuant to Rules 1007(a)(4) and 7007.1 of the Federal Rules of Bankruptcy Procedure filed with the Petition, and all supporting documents are in English. 11 U.S.C. § 1515(c)-(d). The Liquidator has therefore satisfied section 1515 and the Bankruptcy Rules, and this chapter 15 case has been properly commenced.

### C. The Ballacorey Liquidation Is a "Foreign Main Proceeding"

71. A foreign proceeding shall be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has its center of main interests ("**COMI**"). 11 U.S.C. §§ 1502(4), 1517(b)(1). COMI is determined as of the filing of the chapter 15 petition, although the court may consider the period between the commencement of the foreign proceeding and the petition to ensure that COMI has not been manipulated in bad faith. *Fairfield Sentry*, 714 F.3d at 133, 137. Courts may consider "any relevant activities, including liquidation activities and administrative functions." *Id.* at 137. Because every entity has a center of main interests, the absence of evidence of an alternative COMI supports recognition where the debtor is registered. *See Millennium Glob.*, 458 B.R. at 79.

72. Courts in this Circuit consider a non-exclusive list of factors in determining COMI:

> [(1)] the location of the debtor's headquarters; [(2)] the location of those who actually manage the debtor…; [(3)] the location of the debtor's primary assets; [(4)] the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or [(5)] the jurisdiction whose law would apply to most disputes.

*Fairfield Sentry*, 714 F.3d at 137 (quoting *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)). This list "is a helpful guide, but consideration of these specific factors is neither required

nor dispositive." *Id.* The Second Circuit has emphasized "the importance of factors that indicate regularity and ascertainability," *id.* at 138, and a court may consider a debtor's "nerve center," "including from where the debtor's activities are directed and controlled." *Id.* at 138 n.10.

73. Absent evidence to the contrary, a debtor's registered office is presumed to be its COMI. 11 U.S.C. § 1516(c). The presumption is included "for speed and convenience of proof where there is no serious controversy." *Bear Stearns*, 389 B.R. at 335 (quoting H.R. Rep. No. 109-31, pt. 1, at 113 (2005)).

74. Ballacorey has been incorporated under Isle of Man law and has maintained a registered office in the Isle of Man since its incorporation, giving rise to the presumption that the Isle of Man is its COMI. 11 U.S.C. § 1516(c). As shown below, the objective facts confirm, rather than rebut, that presumption.

75. Ballacorey's corporate administration has been provided from the Isle of Man, first by LJ Management and Isle of Man resident directors and later by an Isle of Man corporate services provider. Cork Decl. ¶ 46. Ballacorey has made its statutory filings, including its annual returns and the registration of its charges, with the Isle of Man Companies Registry. Cork Decl. ¶ 47. Ballacorey's Articles of Association are subject to the Companies Act. *See Fairfield Sentry*, 714 F.3d at 137-38.

76. Since June 6, 2025, Ballacorey's affairs have been directed by the Liquidator under the Companies Act. The Liquidator is an insolvency practitioner with Cork Gully LLP. He acts under Isle of Man law: his powers derive from the Companies Act, his statutory reporting runs to the Isle of Man Companies Registry and to Ballacorey's members and creditors, and his conduct is subject to the supervision of the Isle of Man Court. Companies Act §§ 232, 236, 237, 240, 267.

77. Liquidation activities conducted in part outside the place of registration do not displace COMI where the liquidators are subject to the control of the court there. *See Millennium Glob.*, 458 B.R. at 86 (COMI in Bermuda notwithstanding activities of counsel in the United Kingdom, because "counsel are controlled by their clients located in Bermuda, and the Liquidators in turn are subject to the control of the court there").

78. Ballacorey's primary assets are also centered in the Isle of Man. Ballacorey held its cash in accounts at Barclays' branch in Douglas, its claims arise from transactions documented and secured in the Isle of Man, and those claims were previously litigated in the Isle of Man Court. Cork Decl. ¶ 48.

**D. Alternatively, the Ballacorey Liquidation Is a Foreign Nonmain Proceeding**

79. Although the Liquidator submits that the Ballacorey Liquidation is a foreign main proceeding, he alternatively seeks its recognition as a foreign nonmain proceeding. A foreign proceeding shall be recognized as a foreign nonmain proceeding "if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending." 11 U.S.C. § 1517(b)(2). An "establishment" is "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2).

80. Ballacorey's connection to the Isle of Man is not that of a letterbox company. For more than a decade, Ballacorey maintained and operated its U.S. dollar accounts at Barclays' Douglas branch, was managed for much of that period by directors resident in the Isle of Man, granted and registered charges in the Isle of Man, and litigated its claims as a claimant in the Isle of Man Court. Cork Decl. ¶ 49. It continued to engage an Isle of Man corporate services provider through the commencement of the liquidation. *Id.* ¶ 50. These activities reflect nontransitory

economic activity with a local effect in the Isle of Man and, at a minimum, support a finding that Ballacorey has an establishment there.

81. For these reasons, in the event the Court concludes that the Ballacorey Liquidation is not a foreign main proceeding, the Ballacorey Liquidation should be recognized as a foreign nonmain proceeding.

**E. The Requested Relief Accords with the Bankruptcy Code and U.S. Public Policy**

82. A court may refuse to take an action governed by chapter 15 "if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. The exception "requires a narrow reading," and the word "manifestly" restricts it "to the *most fundamental policies of the United States*." *Fairfield Sentry*, 714 F.3d at 139 (quoting H.R. Rep. No. 109-31, pt. 1, at 109) (emphasis in original). Courts "interpret this exception as a narrow one that should be applied sparingly." *ENNIA Caribe*, 594 B.R. at 640. "[E]ven the absence of certain procedural or constitutional rights will not itself be a bar under § 1506." *OAS*, 533 B.R. at 104 (quoting *Ad Hoc Grp. of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*, 701 F.3d 1031, 1069 (5th Cir. 2012)). The key determination is whether the foreign procedures "meet our fundamental standards of fairness." *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010).

83. Recognition of the Ballacorey Liquidation is not manifestly contrary to U.S. public policy. The Companies Act provides for the *pari passu* distribution of assets subject to statutory priorities, creditor participation through meetings and a committee of inspection, the right of creditors and contributories to seek relief from the Isle of Man Court, and public filings with the Isle of Man Companies Registry. Companies Act §§ 226-228, 232, 235, 240, 242, 267. Comity is extended "with less hesitation" where "the foreign proceeding is in a sister common law

jurisdiction with procedures akin to our own." *Metcalfe*, 421 B.R. at 698 (quoting *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 66 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y. 2002)).

84. Recognition will also advance chapter 15's objectives of cooperation with foreign courts, the fair and efficient administration of cross-border insolvencies, and the protection and maximization of the value of the debtor's assets. 11 U.S.C. § 1501(a).

## V. THE COURT SHOULD GRANT THE LIQUIDATOR'S REQUEST FOR DISCRETIONARY RELIEF PURSUANT TO SECTIONS 1507 AND 1521 OF THE BANKRUPTCY CODE

85. Section 1521(a) provides, in relevant part, that "[u]pon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including . . . (4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities; [and] (5) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative . . . ." 11 U.S.C. § 1521(a)(4)-(5).

86. The Bankruptcy Code "confers exceedingly broad discretion, since a court may grant 'any appropriate relief' that would further the purposes of chapter 15 and protect the debtor's assets and the interests of creditors." *In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016).

87. Section 1521(a)(4) "enables a Foreign Representative to take broad discovery concerning the property and affairs of a debtor." *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 346 (Bankr. S.D.N.Y. 2012). Discovery that relates to potential causes

of action the foreign representative may assert concerns the debtor's assets, and such discovery "need not concern assets in the U.S." *Id.* at 347.

88. Courts in this Circuit routinely authorize foreign representatives to obtain discovery under section 1521(a)(4), and through Bankruptcy Rule 2004, to investigate a debtor's affairs and potential claims. "[O]ne of the main purposes of chapter 15 is to assist a foreign representative in the administration of the foreign estate, and Rule 2004 proceedings are one of the mechanisms by which courts provide such assistance." *Platinum Partners*, 583 B.R. at 810. Courts may authorize "the examination of third parties that possess knowledge of the debtor's acts, conduct, liabilities or financial condition." *Id.* at 810-11. And "the purpose of discovery is to determine what information about the debtor is missing or known." *Id.* at 818.

89. Additionally, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In deciding whether to grant post-recognition relief, the Court is "guided by principles of comity and cooperation with foreign courts." *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009). Relief under section 1507 is likewise available where it is consistent with the principles of comity and satisfies the considerations in section 1507(b). 11 U.S.C. § 1507; *see Millennium Glob.*, 471 B.R. at 346-47 (section 1507(a) permits the court to make Bankruptcy Rule 2004 "fully applicable").

90. Discovery from Brown is necessary because Brown misappropriated funds from GGYF, used them to acquire the Bahamas Property and the Manhattan Property, structured the Barclays loans to disguise the source of those funds, and remains indebted to Ballacorey. Brown's testimony and documents bear directly on Ballacorey's "assets, affairs, rights, obligations or liabilities," 11 U.S.C. § 1521(a)(4), including Ballacorey's claims against Brown relating to the

First and Second Brown Indebtedness and the current ownership, encumbrance, and proceeds of the Bahamas Property and the Manhattan Property. Discovery relating to such claims falls squarely within section 1521(a)(4). *See Millennium Glob.*, 471 B.R. at 346.

91. Discovery from banks is necessary to trace U.S. dollar-denominated wire transfers and reconstruct the flow of funds concerning the First through Fourth Transfers, the First Loan and the Second Loan, and the property acquisitions described herein. The Liquidator seeks authority to issue subpoenas for records and related information concerning Ballacorey, GGYF, Brown, LJ Management, GEM-related entities, and any related recipients or transferors. Third-party discovery from banks is a recognized means of identifying the existence and location of assets. *See Platinum Partners*, 583 B.R. at 810-11; *cf. NML Capital, Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) ("It is not uncommon to seek asset discovery from third parties, including banks, that possess information pertaining to the judgment debtor's assets."), *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014).

92. The Liquidator also seeks entrustment of the administration, realization, and distribution of Ballacorey's assets within the territorial jurisdiction of the United States, including any recoveries from Brown. 11 U.S.C. § 1521(a)(5), (b).

93. Section 1521(a)(5) permits the Court to entrust the foreign representative with the administration or realization of the debtor's U.S. assets, and section 1521(b) permits the Court to entrust their distribution, "provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected." 11 U.S.C. § 1521(b); *see Atlas Shipping*, 404 B.R. at 740; *In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614, 626 (Bankr. S.D.N.Y. 2010). Entrustment is appropriate because the Liquidator is the only person authorized to administer Ballacorey's affairs,

and any U.S. recoveries should be distributed through the Ballacorey Liquidation in accordance with the Companies Act. Companies Act §§ 229(2), 235.

94. The requested discovery is limited to information bearing on Ballacorey's assets, affairs, claims, and recoveries, and it will be subject to the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure.

## VI. HEARING DATE AND NOTICE

95. The Liquidator requests that the Court set a hearing on the Petition at the earliest possible time, as section 1517(c) requires that a petition for recognition "be decided upon at the earliest possible time." 11 U.S.C. § 1517(c). The Liquidator proposes to serve notice of the Petition and hearing in accordance with Bankruptcy Rule 2002(q) on the United States Trustee and represents that no further notice is necessary.

96. The Liquidator does not seek provisional relief under 11 U.S.C. § 1519 before the recognition hearing. The Liquidator reserves all rights to seek further or additional relief if circumstances warrant.

## CONCLUSION

**WHEREFORE**, the Liquidator respectfully requests that this Court enter an Order, substantially in the form of Exhibit 1 to this Petition, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: November 16, 2026
Westport, Connecticut

**LENNON MURPHY & PHILLIPS LLC**

By: __*/s/ Kevin J. Lennon*_________
Kevin J. Lennon
1599 Post Road East
Westport, CT 06880
Telephone: (203) 256-8600
Email: kjl@lmplaw.net

-and-

**GLUCK & CO. LLP**

Warren E. Gluck*
Alex M. Englander*
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 897-5887
warren.gluck@glucklp.com
alex.englander@glucklp.com

*Counsel for Stephen Robert Cork as Liquidator of Ballacorey Wheat Limited (in Voluntary Liquidation)*

*Not admitted in Connecticut; *pro hac vice* application forthcoming.

# VERIFICATION

Pursuant to 28 U.S.C. § 1746, Stephen Robert Cork declares as follows:

I am the duly appointed Liquidator of Ballacorey Wheat Limited (in Voluntary Liquidation) which is in voluntary liquidation pursuant to the Companies Act 1931 and the Companies (Winding Up) Rules 1934. I have authority to verify the foregoing Verified Petition, and I have read the Verified Petition, and I am informed, and believe, that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of November, 2026.

Stephen Robert Cork, in his capacity as Liquidator of Ballacorey Wheat Limited (in Voluntary Liquidation)