**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ----------------------------------------------------------------X<br>In re<br><br>Ballacorey Wheat Limited<br>(in Voluntary Liquidation)[1]<br><br>Debtor in a Foreign Proceeding.<br><br>----------------------------------------------------------------X | Chapter 15<br><br>Case No. 26-______ |

**DECLARATION OF STEPHEN ROBERT CORK IN SUPPORT OF VERIFIED PETITION FOR RECOGNITION OF FOREIGN INSOLVENCY PROCEEDING AND RELATED RELIEF**

I, Stephen Robert Cork, declare as follows under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746:

## I. Introduction

1. I am the sole liquidator (the "**Liquidator**") of Ballacorey Wheat Limited (in Voluntary Liquidation) ("**Ballacorey**"). Ballacorey is an Isle of Man private company limited by shares. It is in creditors' voluntary liquidation (the "**Ballacorey Liquidation**") under the Companies Act 1931 (the "**Companies Act**") and the Companies (Winding Up) Rules 1934 (the "**Companies Rules**").

2. I submit this declaration (the "**Declaration**") in support of the Official Form Petition and the Verified Petition for Recognition of Foreign Insolvency Proceeding and Related Relief (together, the "**Petition**").

[1] Ballacorey Wheat Limited (in Voluntary Liquidation) is an Isle of Man limited company, with registration number 116800C.

## II. Qualifications

3. I am a licensed insolvency practitioner and Managing Partner of Cork Gully LLP, 40 Villiers Street, London WC2N 6NJ, England. I have specialized in restructuring since 1989, and my experience spans business transformation, distressed M&A, restructuring, insolvency, asset management, dispute resolution, and special situations across a broad range of industries and jurisdictions.

4. I have been appointed liquidator of a number of distressed companies. Most recently, I was recognized as a foreign representative under chapter 15 of the U.S. Bankruptcy Code was in the case *In re JKL Digital Capital Limited*, Case No. 25-12250 (Bankr. S.D.N.Y. 2025).

5. I am authorized to make this Declaration as the Liquidator of Ballacorey. I am familiar with the facts of this matter. I have acted as liquidator of Ballacorey continuously since my appointment on June 6, 2025, and as sole Liquidator since the resignation of my former joint liquidator, Mark Smith, took effect on February 25, 2026.

6. The facts in this Declaration are based on my personal knowledge; on my review of Ballacorey's books and records and statutory filings; on my review of the file in the Isle of Man litigation described below and of the Barclays Settlement (defined below); on my review of public records; and on my experience and knowledge of Ballacorey. Where I state a fact on information and belief, I so indicate. If called to testify, I could and would testify competently to the facts in this Declaration.

## III. Background

### a. Ballacorey's Formation, Ownership, and Management

7. Ballacorey was incorporated in the Isle of Man under the Companies Acts 1931 to 2004 on June 12, 2006, as a private company limited by shares, with company number 116800C. A true and correct copy of Ballacorey's Certificate of Incorporation dated June 12, 2006, is attached as **Exhibit 1**.

8. Ballacorey's memorandum of association provides for share capital of £2,000 divided into 2,000 shares of £1.00 each. A true and correct copy of the Memorandum of Association is attached as **Exhibit 2**.

9. Ballacorey's registered office is Fort Anne, South Quay, Douglas, Isle of Man IM1 5PD. Ballacorey's 2024 annual return records 100 issued ordinary shares. It identifies Ballacorey's principal trade or business as "Investment Holding." A true and correct copy of the 2024 Annual Return is attached as **Exhibit 3**.

10. Ballacorey was previously a subsidiary of GEM Global Yield Fund Limited ("**GGYF**"), a Cayman Islands company. Ballacorey's 2024 annual return records its 100 issued ordinary shares as held in equal parts by GEM Management Limited and Quist Services Inc., each with an address in Tortola, British Virgin Islands.

11. Ballacorey's corporate affairs were administered by LJ Management (IOM) Limited, formerly known as CM Management Limited ("**LJ Management**"). LJ Management is an Isle of Man fiduciary services company that supplied the directors of Ballacorey and GGYF. Those directors included Clive Needham ("**Needham**") and Robert Burton ("**Burton**").

12. Christopher F. Brown ("**Brown**") is a citizen of the United States and resides there. Based on my review of public records, Brown resides at 521 Round Hill Road, Greenwich, Connecticut 06831. Brown was a director of GGYF from April 26, 2005, until he was removed from GGYF's board on January 14, 2015. Brown was never a director of Ballacorey.

13. Ballacorey maintained two U.S. dollar accounts with Barclays at its branch in Douglas, Isle of Man. They were an account ending in 0633 (the "**First Account**") and an account ending in 9755 (the "**Second Account**"). Barclays Private Clients International Limited held the accounts and made the loans described below until 2016. In 2016, Barclays Bank PLC, acting through its Isle of Man branch, acquired its rights and liabilities by a statutory assignment approved by the Isle of Man High Court. This Declaration refers to both entities as "**Barclays**."

14. Ballacorey's last pre-liquidation annual account was for the financial period ending June 12, 2024. *See* Exhibit 3.

15. On August 14, 2023, Ballacorey executed a legal charge in favor of GGYF securing a principal amount of $10,725,966 over the First Account and the Second Account. Ballacorey's 2024 annual return records indebtedness of $10,725,966 secured by that charge. A true and correct copy of the August 14, 2023 legal charge and its registration documents is attached as **Exhibit 4**.

### b. Brown's Misappropriation of GGYF's Funds and the Barclays Cash-Collateral Structure

16. Based on my review of Ballacorey's books and records and the Isle of Man litigation file, and on information and belief, Brown misappropriated a total of $15,125,966 from GGYF in four tranches between February 26, 2010 and October 10, 2012. In each instance, GGYF acted by and through Brown and others.

17. On February 26, 2010, $5,225,966 was transferred from GGYF to LJ Management (the "**First Transfer**"). LJ Management then transferred the same amount to attorneys acting for Brown and/or GEM Properties (Bahamas) Limited in the purchase of a property in the Bahamas (the "**Bahamas Property**"). GEM Properties (Bahamas) Limited is a company that Brown beneficially owns and that is unrelated to GGYF.

18. On November 17, 2011, $6,200,000 was transferred from GGYF to attorneys acting for Brown in the purchase of an apartment in Manhattan, New York (the "**Manhattan Property**") (the "**Second Transfer**").

19. On September 28, 2012, GGYF transferred a further $3,000,000 to Brown (the "**Third Transfer**"). On October 10, 2012, GGYF transferred another $1,400,000 to Brown (the "**Fourth Transfer**").

20. At the instigation of Brown and others, GGYF assigned to Ballacorey the receivables Brown owed for the First Transfer and the Second Transfer. As a result, Ballacorey became Brown's creditor for $10,725,966 (the "**Brown Indebtedness**"), and GGYF became a creditor of Ballacorey.

21. On information and belief, Brown arranged to borrow substantially the same amounts from Barclays in order to conceal the source of the funds he used to acquire the Bahamas Property and the Manhattan Property. He then purported to repay the Brown Indebtedness by transferring the loan proceeds into the First Account. This made it appear that Brown had acquired the properties with third-party bank lending rather than with funds taken from GGYF.

22. A director of Ballacorey approached Barclays in February 2010 as Brown's representative. By a facility letter dated July 19, 2010, which Brown signed on September 16, 2010, Barclays agreed to lend Brown $5,225,966 for a ten-year term (the "**First Loan**"). The facility letter stated that the loan was "[t]o assist with the purchase of property in the Bahamas." The Bahamas Property had, however, already been acquired with GGYF's funds. The facility letter required that the loan be drawn into Brown's account and then transferred into Ballacorey's account. It also required that Brown's obligations be secured by a legal charge over Ballacorey's account.

23. Brown drew down the First Loan on October 29, 2010. The same amount was transferred into the First Account on November 4, 2010.

24. Brown caused Ballacorey to execute a charge dated October 29, 2010 over the First Account in favor of Barclays as security for Brown's personal borrowing (the "**First Charge**"). Ballacorey's board had resolved on October 21, 2010, to grant a charge only in consideration of lending to Ballacorey itself, not to Brown.

25. On November 17, 2011, the day of the Second Transfer, a Ballacorey director told Barclays that because the money had already been sent from GGYF, the funds would never leave Barclays and would instead go into a segregated Ballacorey account. By a facility letter dated December 1, 2011, which Brown signed on December 2, 2011, Barclays agreed to lend Brown a further $5,500,000 on substantially the same terms, with a stated purpose "[t]o purchase a property" (the "**Second Loan**"). Brown drew down the Second Loan on January 20, 2012, and the same amount was transferred into the First Account that day. True and correct copies of the facility letters dated July 19, 2010 and December 1, 2011 are attached as **Exhibit 5** and **Exhibit 6**, respectively.

26. In June 2012, Needham and Burton, and directors of Ballacorey, caused Ballacorey to execute a second charge over the Second Account in favor of Barclays (the "**Second Charge**"). On June 29, 2012, $10,736,499.88, representing the proceeds of both loans plus accrued interest, was transferred from the First Account to the Second Account, a non-interest-bearing account. By their terms, the First Charge and the Second Charge secured no more than $5,225,966.

27. This structure ensured that the funds taken from GGYF were never actually returned. Ballacorey nominally received the loan proceeds in repayment of the Brown

Indebtedness, but the funds never left Barclays. They remained frozen in Ballacorey's accounts as security for Brown's personal loans, and Ballacorey could not use them.

28. In April 2015, more than five years before the First Loan matured, Barclays acted on Brown's instruction and sought to repay his loan from the cash held in Ballacorey's name. The then manager of Ballacorey refused.

29. The First Loan became repayable in full on October 29, 2020, and Brown failed to repay it. On December 18, 2020, Barclays withdrew $5,225,966 from the Second Account without notice to Ballacorey and applied it to Brown's liability under the First Loan (the "**First Brown Indebtedness**").

### c. The Isle of Man Proceedings and Ballacorey's Claims Against Brown

30. On September 2, 2019, Ballacorey and GGYF sued Brown, Needham, Burton, LJ Management, and Barclays in the High Court of Justice of the Isle of Man, Civil Division (the "**Isle of Man Court**"), under Claim No. ORD 19/0035 (the "**Isle of Man Proceedings**"). The claim form and particulars of claim were amended on December 8, 2023. True and correct copies of the Amended Claim Form and the Amended Particulars of Claim dated December 8, 2023 are attached together as **Exhibit 7**.

31. Barclays denied the claims. It sought rectification of the Second Charge to increase the secured amount to $10,725,966. Ballacorey and GGYF did not pay security for costs, and their claim was struck out effective July 30, 2024. Barclays then pursued its rectification claim against Ballacorey as sole defendant.

32. On October 9, 2025, Ballacorey, acting through its liquidators, and GGYF entered into a settlement agreement with Barclays (the "**Barclays Settlement**"). The Barclays Settlement expressly preserves any claims Ballacorey has against Brown arising from Ballacorey's payments under the First Charge and the Second Charge on account of Brown's indebtedness to Barclays.

Under the Barclays Settlement, Barclays released $50,000 from the Second Account to the liquidators and retained the remaining balance of the Second Account, nearly $5.5 million, on account of Brown's indebtedness to Barclays (the "**Second Brown Indebtedness**").

33. Ballacorey's primary asset is therefore its rights of recovery against Brown, relating to the First Brown Indebtedness and the Second Brown Indebtedness. Brown has repaid none of it.

**d. The Ballacorey Liquidation**

34. Brown's misappropriation, and the resulting loss of Ballacorey's funds to Barclays on account of Brown's personal borrowing, caused Ballacorey's insolvency. Ballacorey was stripped of the funds in the Second Account, and Brown repaid none of the Brown Indebtedness. Ballacorey was therefore unable to meet its liabilities, including its indebtedness to GGYF.

35. On June 6, 2025, the members of Ballacorey held a general meeting, and the creditors held a separate meeting. At the members' meeting, the members passed an extraordinary resolution under section 214(1)(c) of the Companies Act that Ballacorey be wound up voluntarily. At those meetings, the members and creditors appointed me and Mark Smith of Cork Gully LLP, 40 Villiers Street, London WC2N 6NJ, as joint liquidators of Ballacorey, authorized to act jointly or separately. A true and correct copy of the resolutions passed on June 6, 2025 is attached as **Exhibit 8**.

36. The joint liquidators gave notice of our appointment to the Isle of Man Companies Registry. A true and correct copy of the Notice of Appointment of Liquidator (Form IM39D) dated June 6, 2025 is attached as **Exhibit 9**.

37. Mr. Smith resigned as joint liquidator effective February 25, 2026. By written resolution dated June 23, 2026, I continue as the sole Liquidator of Ballacorey, with all the powers

and authority vested in the office of liquidator under the Companies Act. A true and correct copy of that written resolution is attached as **Exhibit 10**.

38. The Ballacorey Liquidation remains open because I am investigating potential claims against third parties to maximize realizations. On June 30, 2026, I filed with the Isle of Man Registrar of Companies a statement of my receipts and payments for the period from June 6, 2025 to June 5, 2026, verified by affidavit, under section 267 of the Companies Act and the Companies Rules. True and correct copies of the Section 267 Statement of Receipts and Payments and the verifying Affidavit dated June 30, 2026 are attached together as **Exhibit 11**.

## IV. Request for Chapter 15 Recognition and Related Relief

39. In addition to the facts set out herein, I believe that the relief requested in the Petition is necessary to maximize value for Ballacorey's creditors and stakeholders. I also believe that the Petition is an integral part of the Ballacorey Liquidation.

40. Ballacorey has property in the United States and in this District. That property includes a retainer deposited with Ballacorey's Connecticut counsel, Lennon Murphy & Phillips LLC of Westport, Connecticut (the "**LMP Retainer**"), which is held in Lennon Murphy & Phillips LLC's client trust account in Connecticut. The LMP Retainer remains in that account as of the date of this Declaration and is Ballacorey's property. Ballacorey's property in the United States also includes its claims and rights of recovery against Brown, who resides in Greenwich, Connecticut.

## V. The Work of the Ballacorey Liquidation

41. Since June 6, 2025, Ballacorey's affairs have been directed by the Liquidator under the Companies Act. My powers derive from the Companies Act. My statutory reporting runs to the Isle of Man Companies Registry and to Ballacorey's members and creditors. When I was

appointed, the powers of Ballacorey's directors ceased, and I alone am authorized to administer Ballacorey's assets and affairs under the Companies Act.

42. Acting through the liquidators, Ballacorey negotiated and entered into the Barclays Settlement, which resolved the Isle of Man Proceedings. Under a consent order of the Isle of Man Court, the proceedings were marked as settled and dismissed in their entirety.

43. I have made Ballacorey's statutory filings with the Isle of Man Companies Registry. They include the notice of appointment and the section 267 statement of receipts and payments, verified by affidavit. In administering the Ballacorey Liquidation, I have also, among other things, collected and realized Ballacorey's available cash held at Barclays; investigated Ballacorey's affairs and potential claims, including its claims against Brown; and taken steps to apply Ballacorey's assets to its liabilities in accordance with the Companies Act.

44. Every creditor of Ballacorey, wherever located, may prove its claim in the Ballacorey Liquidation and will be treated in accordance with the Companies Act.

45. I conduct the Ballacorey Liquidation from both London and the Isle of Man, under Isle of Man law.

## VI. Ballacorey's Center of Main Interests and Establishment in the Isle of Man

46. Ballacorey's corporate administration has always been provided from the Isle of Man. That administration was first provided by LJ Management and directors resident in the Isle of Man and later by an Isle of Man corporate services provider.

47. Ballacorey has made its statutory filings, including its annual returns and the registration of its charges, with the Isle of Man Companies Registry. Ballacorey's Articles of Association are subject to the Companies Act.

48. Ballacorey held its cash in accounts at Barclays' branch in Douglas, Isle of Man. Its claims arise from transactions documented and secured in the Isle of Man. The First and Second Loan facilities, for example, are governed by Isle of Man law. Those claims were previously litigated in the Isle of Man Court.

49. For more than a decade, Ballacorey did the following in the Isle of Man:

a) maintained and operated its U.S. dollar accounts at Barclays' Douglas branch;

b) was managed for most of that period by directors resident in the Isle of Man;

c) granted and registered charges; and

d) litigated its claims as a claimant in the Isle of Man Court.

50. Ballacorey continued to engage an Isle of Man corporate services provider through the commencement of the liquidation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 16, 2026.

________________________________
Stephen Robert Cork (in his capacity as Liquidator of Ballacorey Wheat Limited (in Voluntary Liquidation)